UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSANNE DIAZ,<br><br>              Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>              Defendant. | Case No. EDCV 11-1538 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

## I.   SUMMARY

On October 4, 2011, plaintiff Rosanne Diaz ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; October 7, 2011 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand because the Administrative Law Judge ("ALJ") failed properly to evaluate the medical evidence.

## II.  BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On March 21, 2008, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits.  (Administrative Record ("AR") 16, 115, 118).  Plaintiff asserted that she became disabled on February 19, 2008, due to a heart condition.  (AR 136-37).  The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), a medical expert, and a vocational expert on March 4, 2010.  (AR 29-46).

On April 20, 2010, the ALJ determined that plaintiff was not disabled through the date of the decision.  (AR 24).  Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments:  hypertension with end organ damage, cardiomegaly, cervical and lumbar disc disease, arthritis, and left hand arthritis (AR 18); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 19); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) with certain additional limitations[1] (AR 19); (4) plaintiff could perform her past relevant work as an advertising clerk (AR 23); and (5) plaintiff's allegations regarding her limitations were not credible to

---

[1]The ALJ determined that plaintiff (i) could perform light work; (ii) needed to be able to change positions for one to three minutes each hour; (iii) could not work around unprotected heights, hazardous equipment or open water; (iv) could occasionally climb, balance, stoop, kneel, crouch, and crawl; (v) could not climb ladders; (vi) could use foot pedals occasionally with the left foot and without limitation with the right foot; and (vii) could occasionally reach above shoulder level.  (AR 19).

the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 20).

The Appeals Council denied plaintiff's application for review. (AR 4).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///
///

  (4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

  (5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

  **B.** **Standard of Review**

  Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

  To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed properly to consider significant, probative medical evidence of plaintiff's physical impairments, and, as a result, the ALJ's residual functional capacity assessment lacked substantial evidence. The Court agrees. As the Court cannot find that the ALJ's error was harmless, a remand is warranted.

### A. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[2] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v.

///

---

[2] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).

The opinions of testifying medical experts may also serve as substantial evidence supporting an ALJ's decision when "they are supported by other evidence in the record and are consistent with it." Morgan, 169 F.3d at 600; see also Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

### B. Pertinent Facts

Medical imaging reports dated June 5, 2009 reflect the following: (1) x-rays of plaintiff's hands showed "scattered osteoarthritis in the 1st

carpometacarpal joint and distal interphalangeal joints bilaterally" (AR 464); (2) an x-ray of plaintiff's right shoulder showed "osteoarthritis of the acromioclavicular joint" (AR 465); and (3) x-rays of plaintiff's left knee showed "osteophytes in the medial compartment, consistent with osteoarthritis as well as joint space narrowing" and "minimal arthritis of the lateral tibial plateau" (AR 467) (collectively "June 5 x-rays").

At the hearing, the ALJ called Dr. Sami A. Nafoosi as a medical expert. (AR 32-34, 43-44). Dr. Nafoosi testified about plaintiff's impairments as follows:

> The medical records reviewed shows [sic] that [plaintiff] has hypertension with evidence of end organ damage and a chest X-ray done in February of '08 showing cardiomegaly. [Plaintiff] was also hospitalized during that time and suffered an episode of ventricular tachycardia which required a pacemaker placement. Number two, [plaintiff] has disorder of both the cervical and lumbar spine. This was diagnosed in September of '09, [Exhibit] 12F, page 1 [AR 413], showing arthritis and degenerative disk [sic] disease. Number three, arthritis in the left foot, diagnosed in August of '09, [Exhibit] 12F, page 2 [AR 414]. Number 4, fibromyalgia, that's not medically determined or an impairment in the records I examined. That's the review of the records.

(AR 32). Dr. Nafoosi also testified regarding functional limitations caused by such impairments:

> [Plaintiff] still has a severe limitation which would result in her being limited to jobs where she would not have to lift more than 20 pounds on occasion and 10 pounds frequently. She could sit for eight hours of an eight-hour day, stand or walk for six hours in an eight-hour day, providing she is allowed to change positions briefly one to three minutes each hour. She should not work at heights,

> around heavy moving machinery or near open pools of water. She
> can occasionally stoop, kneel, crouch, crawl, climb, climb stairs. She
> can occasionally use the left lower extremity for foot controls [¶] . . .
> with . . . [¶] [n]o restrictions [in the right lower extremity]. . . . [S]he
> can occasionally work above shoulder level with either upper
> extremity.

(AR 32-33).

In the decision, the ALJ stated the following with respect to the medical expert's testimony:

> In making this determination, I have given greatest weight to
> the opinions of Sami A. Nafoosi, M.D., an impartial medical expert.
> Dr. Nafoosi, a board certified internist, had the opportunity to review
> the medical evidence of record prior to his testimony at the hearing.
> Dr. Nafoosi opined that [plaintiff] would be capable of performing
> the residual functional capacity detailed above in Finding 5 in spite of
> her impairments. After a thorough review of the medical evidence of
> record, the testimony of [plaintiff], and the testimony of Dr. Nafoosi,
> I find the residual functional capacity is consistent with the objective
> medical evidence of record.

(AR 20).

**C. Analysis**

Plaintiff contends that the ALJ failed adequately to consider the June 5 x-rays. (Plaintiff's Motion at 4) (citing AR 464-65, 467). The Court agrees. As the Court cannot find that the ALJ's error was harmless, a remand is warranted.

First, contrary to defendant's suggestion (Defendant's Motion at 3), it does not appear that Dr. Nafoosi accounted for the June 5 x-rays in his evaluation of the record medical evidence. For example, at the hearing, Dr. Nafoosi opined that plaintiff had arthritis and degenerative disc disease in the cervical and lumbar

spine based on the report of a CT Scan of plaintiff's cervical and lumbar spine which reflected such impairments. (AR 32) (citing Exhibit 12F at 1 [AR 413]). Dr. Nafoosi also opined that plaintiff had arthritis in the left foot based on the report of x-rays of plaintiff's feet. (AR 32) (citing Exhibit 12F at 2 [AR 414]). Although the results of the June 5 x-rays are documented in essentially identical medical imaging reports, Dr. Nafoosi made no mention of the findings in such reports. Therefore, Dr. Nafoosi's implicit finding that plaintiff did not have the impairments reflected in such reports (*i.e.*, "scattered osteoarthritis in the 1st carpometacarpal joint and distal interphalangeal joints bilaterally" in plaintiff's hands (AR 464); "osteoarthritis of the acromioclavicular joint" in plaintiff's right shoulder (AR 465); and "osteophytes in the medial compartment, consistent with osteoarthritis as well as joint space narrowing" with "minimal arthritis of the lateral tibial plateau" in plaintiff's left knee (AR 467)) was not supported by or consistent with other evidence in the record (*i.e.*, the June 5 x-rays). Accordingly, the medical expert's testimony regarding plaintiff's residual functional capacity – which, as note above, the ALJ adopted in full – could not serve as substantial evidence supporting the ALJ's residual functional capacity determination. See Morgan, 169 F.3d at 600.

Second, in light of the fact that the ALJ effectively rejected all other medical source opinions in favor of Dr. Nafoosi's testimony, it appears that the ALJ's evaluation of the impairments identified in the June 5 x-rays, and conclusion that plaintiff retained the residual functional capacity to do a limited range of light work in spite of such impairments, were based solely on the ALJ's own lay interpretation of the reports of the June 5 x-rays. As a lay person, however, "an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'" Padilla v. Astrue, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam), and citing Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)); Lopez-

1 Navarro v. Barnhart, 207 F. Supp. 2d 870, 882 (E.D. Wis. 2002) ("[ALJ] may not
2 properly find that a claimant has a certain capacity to perform work-related
3 activities without the support of a physician's medical assessment.") (quotation
4 marks and citations omitted); see also Winters v. Barnhart, 2003 WL 22384784, at
5 *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not allowed to use his own medical
6 judgment in lieu of that of a medical expert.") (citations omitted); Gonzalez Perez
7 v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987)
8 (ALJ may not "substitute his own layman's opinion for the findings and opinion of
9 a physician"); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) (ALJ may
10 not substitute his interpretation of laboratory reports for that of a physician).  To
11 the extent the ALJ found Dr. Nafoosi's testimony inadequate to allow for proper
12 evaluation of the June 5 x-rays, the ALJ should have re-called Dr. Nafoosi or a
13 different medical expert to assist in determining the extent to which the June 5 x-
14 rays reflected any limitation on plaintiff's ability to work.  See Mayes v.
15 Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted) (Although
16 plaintiff bears the burden of proving disability, the ALJ has an affirmative duty to
17 assist the claimant in developing the record "when there is ambiguous evidence or
18 when the record is inadequate to allow for proper evaluation of the evidence.");
19 see, e.g., Armstrong v. Commissioner of Social Security Administration, 160 F.3d
20 587, 590 (9th Cir. 1998) (where there were diagnoses of mental disorders prior to
21 the date of disability found by the ALJ, and evidence of those disorders even prior
22 to the diagnoses, the ALJ was required to call a medical expert to assist in
23 determining when the plaintiff's impairments became disabling).[3]

---

[3]Where it is necessary to enable the ALJ to resolve an issue of disability, the duty to develop the record may require consulting a medical expert or ordering a consultative examination.  See 20 C.F.R. §§ 404.1519a, 416.919a.

1    Finally, the Court cannot find the ALJ's error harmless.[4] The ALJ adopted Dr. Nafoosi's opinions regarding plaintiff's residual functional capacity, in part, based on the erroneous premise that such opinions were "consistent with the objective medical evidence of record." (AR 20).  Therefore, the Court cannot conclude that the ALJ's evaluation of the medical opinion evidence, and in turn, his residual functional capacity assessment would have been the same absent such error.

## V. CONCLUSION[5]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[6]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 28, 2012

                                    /s/
                              Honorable Jacqueline Chooljian
                              UNITED STATES MAGISTRATE JUDGE

---

[4] The harmless error rule applies to the review of administrative decisions regarding disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout, 454 F.3d at 1054-56 (discussing contours of application of harmless error standard in social security cases).

[5] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[6] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).